BARRETT S. LITT, SBN 45527
E-Mail: blitt@kmbllaw.com
RONALD O. KAYE SBN 145051
E-Mail: rok@kmbllaw.com
Kaye, McLane, Bednarski & Litt, LLP
234 Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Attorneys for Plaintiffs

[Additional counsel for Plaintiffs listed
on following page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED BANKS and SHIRLEY LAWRENCE-BANKS,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO AND DOES 1-10, ET AL.,<br><br>Defendants | CASE NO:<br><br>CLASS ACTION COMPLAINT<br><br>1. 42 U.S.C. §1983<br>2. VIOLATIONS OF SHERMAN ANTITRUST ACT (15 U.S.C. § 1, et seq.)<br>3. VIOLATION OF CALIFORNIA CONSTITUTION §§13C AND D<br>4. VIOLATION OF CALIFORNIA GOVT. CODE §11135<br>5. VIOLATION OF CALIFORNIA CIVIL CODE §52.1<br>6. VIOLATION OF ADDITIONAL PROVISIONS OF THE CALIFORNIA CONSTITUTION<br><br>JURY TRIAL DEMANDED |

MICHAEL S. RAPKIN, SBN 67220
E-Mail: msrapkin@gmail.com
SCOTT B. RAPKIN, SBN 261867
E-Mail: scottrapkin@rapkinesq.com
Rapkin & Associates, LLP
723 Ocean Front Walk
Venice, California 90291
Telephone: (310) 319-5465
Facsimile: (310) 319-5355

CAROL STRICKMAN, SBN 78341
E-mail: carol@prisonerswithchildren.org
Legal Services for Prisoners With Children
1540 Market Street, Suite 490
San Francisco, CA 94102
Telephone: (415) 255-7036
Facsimile: (415) 552-3150

Attorneys for Plaintiffs

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

0

## I.      INTRODUCTION

1.      Thousands of San Mateo County jail inmates and their families, most of whom are not convicted but facing charges, are held hostage to grossly unfair and excessive phone charges, forcing them to pay these charges in order to maintain contact with their loved ones who are incarcerated. These charges are nothing but money making schemes by San Mateo County and its jail to force family members desperately trying to maintain contact with their inmate husbands, parents and children to pay for totally unrelated jail expenses or give up their primary lifeline of communication.  San Mateo County runs one of the largest jails in the US, and essentially extorts monies from mostly poor and minority families trying to get by and stay in contact with loved ones. It does so by establishing extortionate and outrageous "commissions" to be paid by this vulnerable population to fund the jails.

2.      The Federal Communications Commission ("FCC") has recently taken decisive action. After many years of deliberation, on October 2, 2015, it reached the decision that it would set standards for ICS rates in order "to rein in the excessive rates and egregious fees on phone calls paid by some of society's most vulnerable: people trying to stay in touch with loved ones serving time in jail or prison." FCC Press Release. https://www.fcc.gov/document/fcc-takes-next-big-steps-reducing-inmate-calling-rates. The FCC observed that "contact between inmates and their loved ones has been shown to reduce the rate of recidivism," but "high inmate calling rates have made that contact unaffordable for many families, who often live in poverty." Reducing the cost of calls "measurably increases the amount of contact between inmates and their loved ones, making an important contribution to the criminal justice reforms sweeping the nation." As Federal Communications Commissioner Mignon Clyburn has said, this system "is inequitable, it has preyed on our most vulnerable for too long, families are being

1

further torn apart, and the cycle of poverty is being perpetuated." She further added that the prison phone industry was "the most egregious case of market failure" she has seen in her career. This lawsuit seeks to put an end to this unconscionable practice by San Mateo County.

3.     On November 5, 2015, the FCC released a "Second Report and Order and Third Further Notice of Proposed Rulemaking" (FCC-136) which establishes rate caps on interstate and intrastate calling rates and either eliminates and restricts the fees inmate telephone providers could charge.

4.     This action against the County of San Mateo, along with soon to be filed lawsuits against Santa Clara County, Contra Costa County, Alameda County and previously filed lawsuits against Los Angeles County, Orange County, Ventura County, Riverside County and San Bernardino County, specifically concerns the role of local California counties and jails, which collect unconscionable "commissions" as payment for granting the exclusive telephone link through which inmates in their various jails can communicate with the outside world, including family, friends, bailbondsmen, legal counsel and others (hereafter collectively "Call Recipients"). That these counties fully understand the injustice they are inflicting, even while they continue it, is captured by the statement of former Los Angeles County Supervisor, Zev Zaroslavsky, "Everyone's making a lot of money at the expense of inmates' families. They're in jail. They're paying their debt to society. *That doesn't give us the right to fleece them*." (emphasis added).[1]

5.     The phone systems are commonly referred to as an Inmate Calling System ("ICS"), which is the term used by the FCC when addressing them.

---

[1] See David Lazarus, *Gouging L.A. County Inmates With High Phone Fees*, The Los Angeles Times, September 8, 2014.

1    Counties like the County of San Mateo enter into exclusive contracts granting to

2    telecommunications companies, the most common of which are Global Tel*Link

3    Corporation ("GTL") and Securus Technologies, Inc. ("Securus") (hereafter

4    collectively the "telecommunications companies"), the exclusive right to establish

5    a phone system through which inmates – both pretrial and convicted – may

6    communicate with Call Recipients, who have to establish a pre-paid account with

7    the telecommunications companies and are charged unreasonable, unjust and

8    exorbitant rates, the lion's share of which are in turn paid to the San Mateo County

9    as what are euphemistically referred to as "commissions." Said

10   telecommunications companies are common carriers within the meaning of the

11   Federal Communications Act. Under this scheme, the County of San Mateo and its

12   jails receive a **guaranteed $795,000 annually**, which comprises the majority of

13   the collected charges.

14        6.      Notably, the State of California provides a stark contrast to the

15   practices of the County of San Mateo.  California's practice establishes that there is

16   no meaningful basis to contend that exorbitant phone rates and commissions are

17   necessary to cover the costs of the service.  In August 2007, California began to

18   phase out commissions at its state prisons, ultimately eliminating them in 2010.

19   Prior to August 2007, calls from California's prisons were $1.50 + $.15/minute for

20   local calls, $2.00 + $.22/minute intrastate and $3.95 + $.89/minute interstate.

21   Now, with no commissions, current per minute rates for intrastate and local calls

22   are $0.135 and $0.09, respectively, and the cost of an intrastate 15 minute call is

23   $2.03.  Thus, the same 15-minute intrastate call without the commissions is

24   61.70% less than when the State received commissions ($3.27 differential in the

25   post commission fee divided by $5.30 total fee when commissions were used).

26        7.      These payments, euphemistically called "commissions," are an

27   integral part of a scheme by virtue of which the County of San Mateo and the

28

telecommunications companies conspire and share in charging Call Recipients unjust, unreasonable and exorbitant rates to communicate with inmates, as well as fees that are illegal under California law. The rates charged to inmates and their families, friends and associates are far greater than those paid for ordinary telephone service.

8.  These unjust, unreasonable, excessive and unlawful fees work a terrible hardship on inmates, and their family, friends and associates who bear the brunt of the charges. Most inmates of San Mateo County jails are relatively poor and lack significant financial resources; they are disproportionately people of color, especially African-American and Latino; many suffer from serious mental illness. Their families, friends and associates similarly are relatively poor, people of color and lack significant financial resources. The charges at issue in this complaint unlawfully put the burden on inmates' families, friends and associates of paying for County services and costs that are rightfully the responsibility of the taxpayers and society at large. These practices limit contact between inmates and their families, friends, associates and other Call Recipients due to their exorbitant costs, resulting in greater isolation for inmates and reduced support, and undermining the objective of returning inmates to the community with greater and stronger ties. Many people are forced to limit their contact with inmates far more than they would wish because of the cost.

9.  Although the Complaint identifies Defendant County of San Mateo, the Sheriff's Department of San Mateo County is a part of that County and, as the term "County" or "County Defendants" is used in this Complaint, it encompasses the Sheriff's Department of San Mateo County as well as the County at large.

10.  Plaintiffs seek damages and injunctive relief, including refunds of the unlawful sums they paid described in this Complaint.

11.     Defendant San Mateo County's wrongful conduct involves relatively small amounts of damages for each class member. Defendants are carrying out a scheme to deliberately collect unlawful but small sums of money from large numbers of Call Recipient Class Members and Inmate Class Members. Call Recipient Class Members are individuals who accept calls from the incarcerated inmate, and set up an account with the third party phone providers. Inmate Class Members are the incarcerated individuals who use the telephone to contact the Call Recipient Class Members. The Defendants conduct unlawfully burdens Class Members' ability to communicate with loved ones, friends, associates or persons important to their or their loved ones' legal situation. Each class brings this action on their own behalf and on behalf of all others similarly situated.

12.     The gravamen of this Complaint concerns the County of San Mateo's liability for 1) violation of 42 U.S.C. §1983 (for depriving inmates and their families and associates their First Amendment rights of association, and unconstitutionally conditioning their use of the phones on such outrageous charges in violation of the Fifth Amendment's due process and unlawful takings provisions, 2) a violation of the Sherman Antitrust Act, 15 U.S.C. §1, et seq. and 3) various supplemental state law claims, in particular a) that the "commissions", though denominated as such, are an unlawful tax imposed in violation of Article 13 C of the California Constitution; b) that the commissions have an unlawful disparate impact on African-Americans and Latinos in violation of Govt. Code §11135, and c) that the commissions constitute a violation of California Civil Code §52.1 by depriving the Plaintiffs of their rights through intimidation, threat or coercion.

13.     Plaintiffs anticipate that the Complaint will be amended to add additional Named Plaintiff Class Representatives for the County of San Mateo.

## II.   JURISDICTION AND VENUE

14.   Plaintiffs present federal claims for relief under 42 U.S.C. §1983 and 15 U.S.C. § 1, et seq. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343. Plaintiffs' state law claims are so related to their federal law claims that they form part of the same case or controversy. Accordingly, supplemental jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367.

15.   Plaintiffs' claims arise out of acts of the Defendants in San Mateo County, located within the Northern District of California.  Accordingly, venue is proper within the Northern District of California.

16.   All Plaintiffs – whether inmates for whom a third party ICS account was in the past or present established, or will in the future be established, and Call Recipients who establish the ICS account (defined more fully in ¶1, *supra*) – have standing because both inmates and Call Recipients suffered an injury in fact. Inmates, even if they did not pay or contribute to payment for the ICS, were and will be injured because the unlawful conduct alleged herein restricted their practical ability to communicate with the outside world. Call Recipients were injured both because the unlawful conduct alleged herein restricted their practical ability to communicate with inmates and because they paid for unlawful fees and charges.

## III.   PARTIES

### A.   PLAINTIFFS

17.   Plaintiff Alfred Banks is a male inmate at the Maguire Correctional Facility in Redwood City, California, starting in 2016 and continuing to this date.

18.   Plaintiff Shirley Lawrence Banks is Alfred Banks's wife, and directly bears the cost of the charges for telephone calls made by her husband. Therefore, Plaintiff Shirley Lawrence Banks qualifies as the payor of said fees. Mrs. Banks is

a resident of San Mateo County. On or about December 16, 2015, Counsel for Plaintiffs submitted a Cal. Govt. Code class § 910 claim to San Mateo County on behalf of Thomas Shireman, Alyssa Crombie, and a class of similarly situated persons who have been and will be affected by the imposition of illegal and unconstitutional telephone related charges as alleged herein.  On February 10, 2016, the County sent notice that the claim was rejected by the Board of Supervisors on February 9, 2016.   Plaintiffs Alfred Banks and Shirley Lawrence are members of that class of similarly situated individuals.

19.     Defendant San Mateo County (hereafter "County") is a public entity organized and existing under the laws of the State of California. The San Mateo County Sheriff's Department (hereafter "SMCSD") is a public entity within the meaning of California law, and is an agency of San Mateo County (Defendants San Mateo County and the San Mateo County Sheriff's Department are hereinafter collectively referred to as "County Defendants"). The County is sued in its own right for a County and/or SMCSD policy, practice or custom which caused Plaintiffs' injuries in violation of one or more federal rights, and is sued as well under California state law for violation of California constitutional guarantees, as well as violations of Civil Code §52.1 and Govt. Code §11135.

20.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will give notice of this complaint, and of one of more DOES' true names and capacities, when ascertained. Plaintiffs are informed and believe, and based thereon allege that Defendants DOES 1 through 10 are responsible in some manner for the damages and injuries hereinafter complained of. Because there are numerous Defendants, each of which may have Doe Defendants that should appropriately be named in the Complaint, ten Doe

7

Defendants may be inadequate. Plaintiffs reserve the right to seek leave to add Doe Defendants.

21.     Individual Defendants from San Mateo County (although not currently named, but who may be named in the future) may at times be referred to herein collectively as the "Individual Defendants." .

22.     Upon information and belief, Plaintiffs further allege that, at all times relevant herein, the Individual Defendants participated in, implemented, supervised, approved, and/or ratified the unconstitutional or illegal acts undertaken on behalf of the County Defendant with regard to which they are named as Individual Defendants.

23.     Plaintiffs are informed and believe, and thereupon allege that, at all times relevant herein, the Individual Defendants, and each of them, were the agents, servants and employees of the County Defendant with regard to which they are named as Individual Defendants, and were acting at all times within the scope of their agency and employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

24.     When a County Defendant is named on state law claims, it is named not only under a theory of directly liability, but also as an entity responsible in respondeat superior for the actions undertaken by its agents, servants and employees. Said respondeat superior liability extends to and encompasses, but is not limited to, the ministerial acts of implementing the contracts and ICS charges challenged in this Complaint.

25.     When the phrase "San Mateo County Defendants" is used in this Complaint, it refers not only to the County Defendants, but to the Doe Defendants and to any Individual Defendants who may be named with regard to that County.

## IV.    CLAIMS OF CLASS REPRESENTATIVES

26.     Alfred Banks is African-American. He is currently, and for the foreseeable future will be, incarcerated in the Maguire Correctional Facility. He attempts to stay in close contact with his wife Shirley Lawrence Banks and calls her at least twice a day. However, due to the cost of each call he makes from jail, his wife pays a high price to stay in touch with her husband. Mr. Banks is a member of a class of similarly situated individuals that submitted a claim for damages pursuant to California Government Code §910 *et seq.* by certified mail on December 16, 2015. Mr. Banks is a Named Plaintiff in all claims asserted in this complaint *except* that he is not a Named Plaintiff in the federal claims brought under the FCA and 42 U.S.C. §1983 (whether for damages or injunctive relief). Plaintiff Banks brings this suit on his own behalf and on behalf of a class of similarly situated persons, defined elsewhere in this Complaint.

27.     Shirley Lawrence Banks, Mr. Banks's wife, is also African-American. Due to the cost of each call, whether through GTL, Securus, or another telecommunications company, she is constantly depositing more and more money into her husband's prepaid phone account. Mrs. Banks pays between $300 and $350 per month in phone charges.  Mrs. Banks was retired up until recently when she began working as a part time cashier at Wal-mart in order to continue to communicate with her husband and pay for the phone calls.   The cost of these calls has placed a significant burden upon her. Since Mr. Banks's imprisonment, Mrs. Banks has paid many hundreds of dollars to Securus.  Mrs. Banks is a member of a class of similarly situated individuals that submitted a class claim for damages pursuant to California Government Code §910 *et seq.* by certified mail on December 16, 2015. Plaintiff Shirley Lawrence Banks brings this suit on her own behalf and on behalf of a class of similarly situated persons, defined elsewhere in this Complaint.

1

## V.    CLASS ACTION FACTUAL ALLEGATIONS

2       28.    The County of San Mateo entered into *exclusive* contracts with Global

3   Tel*Link (hereinafter referred to as "GTL") for a period of several years from on

4   or about November 2007 through on or about March 2013 and Securus

5   Technologies, Inc., (hereinafter "Securus") from on or about April 2013 to the

6   present, to provide pay telephone services from San Mateo County's jails and other

7   correctional facilities, resulting in a monopoly for GTL and Securus who received

8   the contract. Because these contracts were/are exclusive to GTL and Securus and

9   because inmates are literally a captive market with no ability to choose another

10   telephone company, there are no competitive market forces to constrain the prices

11   set by GTL and Securus.[2]

12       29.    In return for this monopoly power, however, GTL and Securus

13   provide kickbacks, masqueraded as "site commissions," to the County of San

14   Mateo.  Indeed, the County of San Mateo selected GTL and Securus to be the third

15   party phone providers based on the fact that they were the companies that agreed to

16   pay the highest amount in annual commissions.  In order to generate these sizable

17   kickbacks, "[f]amilies of incarcerated individuals often pay significantly more to

18   receive a single 15-minute call from prison than for the basic monthly phone

19   service."[3] In addition, GTL and Securus impose unnecessary and unconscionable

20   fees and charges on accounts used for inmate telephone calls, all of which "inflicts

21   substantial and clear harm on the general public,"[4] including Plaintiffs.

22

23

24   [2] *See In re Rates for Interstate Inmate Calling Servs*. I, 28 FCC Rcd. 14107, 14129

25   (F.C.C. Sept. 26, 2013).

     [3] *Id.*, 28 FCC Rcd. at 14130.
26

27   [4] *In re Rates for Interstate Calling Servs*. II, 40, 15929, 15938 (F.C.C. Nov. 21,

     2013).
28

30.     Since County Defendant's commission contract provides a substantial minimum guaranteed fee against an identified percentage of the ICS charges for the County of San Mateo after which Securus still make a substantial profit, it is obvious that, without the commissions, the charges would be substantially lower, and they bear no reasonable relationship to the actual cost of providing the ICS service.

31.     County Defendants use its annual commissions as provided by Penal Code §4025(c-d), which states that any money or commission collected by a jail for the use of pay phones primarily used by incarcerated inmates shall be deposited in the Inmate Welfare Fund and used first for the benefit, education and welfare of inmates and, to the extent not needed for that purpose, may be used for the maintenance of county jail facilities.  Nonetheless, rather than using the money primarily for vocational and educational programs, or other programs designed for the rehabilitation of inmates, much, if not most, of the money deposited in the Inmate Welfare fund is spent on general jails issues, including maintenance, equipment, office furniture, salaries and, in some instances, food. The demographics of the jail population of County Defendants' jails are highly disproportionate to the demographics of San Mateo County as a whole. While Plaintiffs do not currently have statistical breakdown of San Mateo County, there are readily available statistics available on the demographics of the California prison population which, on information and belief, mirrors that of the County jails. While approximately 29% of the California male prison population is African-American, less than 7% of the California population is African American. In 2013, 4.367 % of all African-American males (4,367 out of every 100,000) in California were imprisoned, compared to .922 % (922 out of every hundred thousand) for Latinos, and .488% (488 out of every hundred thousand) for whites.

Said another way, African-Americans are imprisoned at almost 10 times the rate of whites, and Latinos are imprisoned at almost twice the rate of whites.

32.     The jail population is similarly disproportionately composed of persons with mental illnesses or drug addiction, both of which qualify as disabilities. A 2006 study by the U.S. Department of Justice found that more than half of all prison and jail inmates have a mental health problem compared with 11 percent of the general population, yet only one in three prison inmates and one in six jail inmates receive any form of mental health treatment. Other data indicate that approximately 20% of incarcerated inmates have a serious mental illness, and 30 to 60 % have substance abuse problems. The percentages increase significantly when including broad-based mental illnesses. For example, 50 percent of males and 75 percent of female inmates in state prisons, and 75 percent of females and 63 percent of male inmates in jails, will experience a mental health problem requiring mental health services in any given year.

## A.   FACTUAL ALLEGATIONS

33.     For a period of several years and continuing through on or about March 31, 2013, the County had a written agreement with GTL to provide ICS for the SMCSD. Pursuant to that agreement, GTL agreed to pay, and did pay, the County a Minimum Annual Guaranty of $620,000, adjusted each year based on the number of inmates housed in the County's jails. Plaintiffs are currently unaware of the actual commission amounts that GTL has paid to this County for each year this agreement was in effect.

34.     Effective on or about April 1, 2013, the County began its current agreement for ICS with Securus. The original terms of the current written agreement was for a term of three years, under which the County receives a Minimum Annual Guaranty of $820,000 for the first year, and $795,000 for each

1   year thereafter.  Upon information and belief, this contract was renewed on the

2   same terms until at least 2017.

3       35.     In addition, upon information and belief, the County also has an

4   agreement with GTL, Securus and/or another third party provider, the details of

5   which are currently unknown to Plaintiffs, but which generally involve the sale of

6   prepaid direct call phone cards directly to inmates. As with the GTL and Securus

7   arrangements, the calling cards have unreasonable, unjust and grossly excessive

8   rates, with a connection fee and a rate per minute far exceeding the standard rate

9   for local calls, or those of the San Mateo County region.

10      36.     At no time did the County's residents vote to approve the foregoing

11  commissions paid by GTL or Securus to the County or the rates charged to the

12  inmates and/or Call Recipients pursuant to the County's agreements with GTL or

13  Securus.

14  **VI.    CLASS DEFINITIONS**

15      37.     The Named Plaintiffs bring this action on their own behalf, and on

16  behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal

17  Rules of Civil Procedure.

18      38.     Because there is a race/ethnicity disparate impact claim in the case,

19  and because Plaintiffs' contention that persons not part of the protected disparate

20  impact categories (i.e., African-American and Latino) are appropriate class

21  members for a disparate impact claim may be disputed, Plaintiffs have defined a

22  sub-class for the disparate impact claims composed of African-Americans and

23  Latinos only. This sub-class would only apply in the event the Court were

24  ultimately to conclude that a) persons who are not African-American or Latino

25  (e.g., white inmates and their families) do not have standing to assert a disparate

26  impact claim, or are not members of a disparate impact class, even though they

27  suffered the same injuries as African-Americans and Latinos, and b) the disparate

28

1   impact classes must accordingly be limited to African-Americans and Latinos. This

2   alternative sub-class applies only to the disparate impact claims and is referred to

3   as the Limited Disparate Impact Sub-Class.

4       39.     The Named Plaintiffs for the General Class of San Mateo County are

5   as follows:

6           a.  Alfred Banks (current inmate); and

7           b.  Shirley Lawrence Banks (Alfred Banks's wife, who has established

8               and paid for a pre-paid ICS account to allow her to communicate with

9               her husband).

10      40.     The Proposed Named Plaintiffs for the Limited Disparate Impact Sub-

11  Class of San Mateo County are as follows:

12          a.  Alfred Banks (current African-American inmate);

13          b.  Shirley Lawrence Banks (African-American wife of Alfred Banks,

14              who has established and paid for a pre-paid ICS account).

15      41.     At times in this Complaint the General Class Named Plaintiffs may be

16  referred to collectively by that title. Similarly, at times in this Complaint, the

17  Limited Disparate Impact Sub-Class Named Plaintiffs may be referred to

18  collectively by that title.

19      42.     Additionally, at times in this complaint, the General Class and

20  Limited Disparate Impact Sub-Class Named Plaintiffs who were or are inmates are

21  referred to collectively as the "Named Inmate Plaintiffs", and the General Class

22  and Limited Disparate Impact Sub-Class Named Plaintiffs who were Call

23  Recipients are referred to collectively as the "Named Call Recipient Plaintiffs."

24      43.     Also, the General and Limited Disparate Impact Sub-Class Members

25  who qualify as Call Recipients at times may be referred to collectively as "Call

26  Recipient Class Members," and the General and Limited Disparate Impact Sub-

27

28

Class Members who qualify as inmates at times may be referred to collectively as "Inmate Class Members."

### A. GENERAL CLASS DEFINED

44.    The General Rule 23(b)(2) Class (referring to the class of people seeking purely injunctive relief) of San Mateo County is generally defined as follows:

> Those individuals or entities that qualify as either a) a past, present or future San Mateo County Jail inmate for whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company (currently Securus) that has contracted with the San Mateo County to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any San Mateo County Jail Facility are paid, and out of which collected funds the County of San Mateo is paid commissions pursuant to its contract with the telecommunications company.

45.    The General Rule 23(b)(3) Class (referring to the class of people seeking monetary relief in addition to injunctive relief) of San Mateo County is generally the same, but limited to those who suffered monetary harm and so excludes certain future class members, and is defined as follows:

> Those individuals or entities, through the earlier of the complete cessation of the challenged conduct or the final resolution of this case, that qualify as either a) a past or present San Mateo County Jail inmate for whom a third party ICS account was established, or b) a Call Recipient, i.e.,

15

inmates' family, friends, bailbondsmen, legal counsel, or others, who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company (currently Securus) that has contracted with the County of San Mateo to provide third party phone accounts for phone access to County Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any County of San Mateo Jail Facility are paid, and out of which collected funds the County of San Mateo is paid commissions pursuant to its contract with the telecommunications company.

**B.     LIMITED DISPARATE IMPACT SUB-CLASS DEFINED**

46.     The Limited Disparate Impact Rule 23(b)(2) Sub-Class (referring to the class of people seeking purely injunctive relief) of San Mateo County applies only in the event the Court determines that a disparate impact class is limited to African-Americans and Latinos. This sub-class is generally defined as follows:

Individuals that qualify as either a) a past, present or future County of San Mateo Jail African-American or Latino inmate for whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., an African-American or Latino inmates' family, friends, bailbondsmen, legal counsel, or others, who is either African-American or Latino, and who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company (currently Securus) that has contracted with the County of San Mateo to provide third party phone accounts for phone access to County of San Mateo Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any County of San Mateo Jail Facility are paid, and out of which collected

funds the County of San Mateo is paid commissions pursuant to its contract with the telecommunications company.

47.     The Limited Disparate Impact Rule 23(b)(3) Class (referring to the class of people seeking monetary relief in addition to injunctive relief) of San Mateo County is generally the same, but limited to those who suffered monetary harm and so excludes certain future class members, and is defined as follows:

> Individuals, through the earlier of the complete cessation of the challenged conduct or the final resolution of this case,  that qualify as either a) a past  or present County of San Mateo Jail African-American or Latino inmate for whom a third party ICS account was in the past or present, or in the future will be, established, or b) a Call Recipient, i.e., an African-American or Latino inmates' family, friends, bailbondsmen, legal counsel, or others, who is either African-American or Latino, and who in the past or present has established, or will in the future establish, a pre-paid ICS account with a telecommunications company (currently Securus) that has contracted with the County of San Mateo to provide third party phone accounts for phone access to County of San Mateo Jail inmates, from which pre-paid accounts the phone charges and administrative or other fees for calls with inmates housed or confined in any County of San Mateo Jail Facility are paid, and out of which collected funds the County of San Mateo is paid commissions pursuant to its contract with the telecommunications company.

## VII.    COMPLIANCE WITH RULE 23 REQUIREMENTS DEFINITIONS

### A.    NUMEROSITY

48.     Because California is such a large state, many of its jail systems are large compared to the average jail system in the United States.

17

49. The San Mateo County Jail has a jail population numbering around 1,000 inmates.

50. Average jail turnover rate in US jails is 15 times per year. http://apps.fcc.gov/ecfs/document/view;NEWECFSSESSION=KnsqVy1h8yKTrl2 gyF3g621nyZNJN2nJpXX6DFxznyXyXnh8LJhT!1736751079!-973180750?id=60001115155.

51. While the turnover rate is smaller in large jails, the jail population turns over several times per year.

52. Even assuming that only a small fraction of inmates and their families avail themselves of prepaid ICS accounts, on information and belief, each class for San Mateo County numbers in the thousands.

**B.** **COMMON ISSUES OF FACT OR LAW**

53. The County of San Mateo has a contract with a telecommunications company, the terms of which provide a minimum annual guaranteed payment against a percentage that goes to the County Jail for the exclusive right to provide pre-paid Call Recipient phone accounts to receive inmate calls.

54. The common issues of fact or law applicable to each class include:

   a. Are the charges pursuant to which Defendant County of San Mateo receives Contract Funds so excessive, arbitrary and/or unreasonable as to deprive or limit Class Members' ability to reasonably communicate between Inmate Class Members and their families and loved ones who are Call Recipient Class Members in violation of the First Amendment and/or Due Process clauses of the United States and/or California Constitutions?

   b. Are the charges pursuant to which Defendant County of San Mateo receives Contract Funds so excessive, arbitrary and/or

unreasonable as to deprive or limit Class Members' of due process by virtue of their disproportionate relationship to the reasonable cost to Defendant County of San Mateo of ICS usage?

c. Are the charges pursuant to which the Defendant County San Mateo receives Contract Funds so excessive, arbitrary and/or unreasonable as to place unconstitutional conditions on Class Members' exercise of their Fifth Amendment (and parallel state Constitutional) rights and/or constitute an unlawful taking in violation of Federal and California due process and unlawful takings clauses?

d. Do the Contract Funds qualify as an unlawful tax under Articles 13 C and/or D of the California Constitution?

e. Do the ICS charges that provide the source of the Contract Funds received by Defendant County of San Mateo, and consequently the Contract Funds, have a disparate impact on African-Americans and Latinos, and, if so, a) are the Contract Funds necessary to the operation of the County Jails or otherwise substantially justified, and b) if they are, can they be replaced by an equally effective but less discriminatory alternative?

f. If the ICS charges that provide the source of the Contract Funds received by Defendant County of San Mateo, and consequently the Contract Funds, have a disparate impact on African-Americans and Latinos, do persons who are injured by such charges who are not African-American or Latino have standing to receive redress for such unlawful charges?

19

g.  Do the ICS Contracts create, or contribute to the creation of, a coercive choice for Class Members between paying unlawful ICS charges (on any of the foregoing grounds) or foregoing spoken communicational between inmates and family, friends or other associates and thereby violate Civil Code §52.1?

h.  Are presumed damages available to Plaintiffs and the Class Members for their non-economic damages for violation of the federal rights asserted in the complaint?

55.  While there are additional common issues, these issues alone more than establish that there are common issues.

### C.  TYPICALITY

56.  In accordance with F.R. Civ. P. Rule 23(a), the claims of the Named Plaintiffs are typical of each class for which they are named as a class representative. All Named Inmate Plaintiffs were in the custody of San Mateo County Jail when they were subjected to the unlawful conduct alleged in the Complaint, which unlawful conduct applied and applies to all inmates in San Mateo County Jail, who established, or whose family or other associates established, an ICS pre-paid account through Call Recipients. All Named Call Recipient Plaintiffs established a pre-paid ICS account with San Mateo County Jail in order to be able to communicate with an inmate housed in San Mateo County Jail, and were accordingly subjected to the unlawful conduct alleged in the Complaint, which unlawful conduct applied and applies to all Call Recipients who established an ICS pre-paid account through Call Recipients.

57.  Thus, the Named Plaintiffs for the General Class of San Mateo County and Limited Disparate Impact Classes have the same interests, and have suffered the same type of damages as the Class Members of those classes. Named Plaintiffs' claims for the respective classes alleged in this Complaint are based

upon the same or similar legal theories as the claims of the Class Members. Each class member of the respective classes alleged herein suffered actual damages as a result of the actions of each Defendant applicable to that class. The actual damages suffered by Plaintiffs are similar in type and amount to the actual damages suffered by each class member.

58.     The economic losses suffered by each class member (whether General or Limited Disparate Impact Sub-Class) are commonly determined by the amount paid by that class member for the ICS charges paid by or on behalf of that class member, plus interest to be determined.

### D.     ADEQUACY OF REPRESENTATION

59.     In accordance with F.R. Civ. P. Rule 23(a), the Named Plaintiffs will fairly and adequately protect the interests of the class. The interests of the Named Plaintiffs are consistent with and not antagonistic to the interests of each class.

60.     Similarly, class counsel are experienced class action litigators who will fairly and adequately protect the interests of each class.

### E.     PREDOMINANCE AND SUPERIORITY

61.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

62.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

63.     In accordance with Fed.R.Civ.P. Rule 23(b)(2), Plaintiffs are informed and believe, and thereon allege that Defendants have acted on grounds generally applicable to the class.

64.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interests of Class Members in individually controlling the prosecution of a separate action is low in that most Class Members would be unable to individually prosecute any action at all. The amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them on an individual basis. It is desirable to concentrate all litigation in one forum because all of the claims arise out of the same basic pattern of conduct, the legality of which is subject to class wide determination. It will promote judicial efficiency to resolve the common questions of law and fact in one forum rather than in multiple courts. Because the unlawful conduct alleged herein is systemic, it is particularly well suited to resolution on a class basis, as the critical questions in the case may be answered on a class wide basis. Indeed, in this case, there are no individualized issues at all regarding liability. Either the charges are lawful under the legal theories implicated by this Complaint or they are not.

65.     The claims raised herein are susceptible to common proof. Defendant County of San Mateo has a contract under which it receives a minimum fee against a percentage of certain proceeds in exchange for its grant of exclusive ICS rights. The phone charges and related fees that Class Members pay are uniform across Class Members, and are discoverable from the contracted telecommunications company computerized records. The race and ethnicity of Class Members for the

1   disparate impact claims are discoverable from jail and phone records, either

2   because they directly contain such information or because they can be determined

3   from statistical analyses based on those records (including from census information

4   based on addresses).

5       66.    Plaintiffs know of no difficulty that will be encountered in the

6   management of this litigation that would preclude its maintenance as a class action.

7   The class action is superior to any other available means to resolve the issues

8   raised on behalf of the classes. The class action will be manageable because

9   computerized records systems exist from which to ascertain the members of the

10   class and to ascertain some of the proof relevant to Plaintiffs' claims. Liability can

11   be determined on a class-wide basis based on class wide evidence because the

12   Plaintiffs complain of systemic and widespread policies and practices that are

13   uniform for Defendant County of San Mateo, based on their particular contract

14   with the relevant telecommunications company. Named Plaintiffs and the Class

15   Members are entitled to economic damages under federal and state law, and to

16   such other damages as may be determined by the Court or the trier of facts; to

17   statutory damages under Civil Code § 52.1; and, in any event, individualization or

18   variability in damages is not a bar to a liability certification based on common

19   liability issues.

20       67.    In the event that a determination is made that the disparate impact

21   claim is limited only to African-Americans and Latinos (a proposition that

22   Plaintiffs contest), those Class Members who are African-Americans and Latinos

23   can be identified through a combination of available records and self-identification.

24       68.    Plaintiffs do not know the identities of the Class Members. The

25   identities of the Class Members are ascertainable from a combination of San Mateo

26   County Jail and the County's contracted telecommunications company records.

27   Plaintiffs are informed and believe, and thereon allege, that the foregoing computer

28

records reflect the identities, including addresses and telephone numbers, of the persons who qualify as Class Members, and the charges incurred, and that it is possible to ascertain from those records who qualifies as a class member of each class.

69.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), Class Members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that the telecommunications company computer records and County Jail records for Defendant County of San Mateo contain a current or last known address for Class Members, as well as the billing information pertinent to each class member.

## VIII.  APPROPRIATENESS OF EQUITABLE RELIEF

70.     Inmate Plaintiffs and Class Members currently incarcerated, and Call Recipient Plaintiffs and Class Members with current and operating ICS accounts, are and will continue to be, subject to the unlawful ICS phone charges addressed in this Complaint.

71.     Defendant County of San Mateo's continuing violations of law under applicable United States and California constitutional and statutory provisions causes Plaintiffs and Class Members continuing, sweeping and irreparable harm.

72.     Because no adequate remedy at law exists for the injuries alleged herein, Plaintiffs seek injunctive relief under both federal and state law, including restitution in amounts to be determined at trial based on the unlawful payments plus interest.

## IX.   DAMAGES

73.     As a result of San Mateo County Defendants' unlawful conduct, Plaintiffs and Class Members have suffered, and will continue to suffer, compensable damages in amounts to be determined at trial, including economic,

physical and emotional distress damages, in amounts according to proof at trial. The economic damages and/or refund/restitution/disgorgement are susceptible to class wide proof based on the computerized records of the applicable telecommunications company, the San Mateo County Jail, and the applicable documents and records memorializing and documenting the ICS charges complained of herein.

74.    Plaintiffs and the class members are entitled to statutory damages under state law, and to presumed damages under federal law.

75.    San Mateo County Defendants acted maliciously, fraudulently or oppressively, and in reckless disregard of the Plaintiffs' and Class Members' rights, thereby entitling Plaintiffs and the Class to an award of punitive damages from all Defendant individuals except the County Defendants or any governmental entity.

## X.    CLAIMS

### A.    VIOLATIONS OF 42 U.S.C. §1983 [BY ALL PLAINTIFFS (OTHER THAN ALFRED BANKS) AGAINST SAN MATEO COUNTY DEFENDANTS]

76.    Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

77.    Defendant County of San Mateo is a local government entity susceptible to suit under 42 U.S.C. §1983.  All of the conduct alleged herein was done under color of state law, pursuant to a governmental policy, custom or practice. Each of the contracts alleged herein was approved by, and entered into under the authority of, the San Mateo County Board of Supervisors.

78.    The conduct alleged herein violates and unduly burdens the Class Members' rights of association and meaningful personal communication with family, friends, associates and other Call Recipients in violation of the First Amendment to the United States Constitution.

79.     The conduct alleged herein violates the Fifth Amendment to the United States Constitution. Both Call Recipients and Inmate Plaintiffs' and Class Members' ability to speak to loved ones, friends, and counsel is unconstitutionally conditioned on ICS payments that unreasonably burden the exercise of Fifth Amendment rights to just compensation, unreasonably forces Plaintiffs and the classes alone to bear public costs that should be borne by the public as a whole, and additionally bear no reasonable nexus or rough proportionality to the required payments and the cost to, or burden or effect on, the County of San Mateo by allowing the provision of such calls. Plaintiffs and Class Members' rights to due process of law were unlawfully abridged, as explained above, and their rights to equal protection of the laws were denied in that the conduct complained of herein was arbitrary and capricious.

80.     ICS charges are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to control inmates' access to the outside world, and therefore government entities can pressure and coerce Class Members into paying hugely disproportionate and unreasonable phone charges in order to be able to communicate with loved ones and others herein referred to as Call Recipients.

81.     Even if the San Mateo County Defendants could deny inmate phone calls altogether, that is not what has occurred. Once ICS phone calls are allowed, it cannot condition that benefit by infringing and burdening Fifth Amendment rights by forcing Plaintiffs and Class Members to pay funds that are unreasonable and substantially disproportionate to the cost to, or burden or effect on, San Mateo County Defendants for allowing ICS calls.

82.     Accordingly, San Mateo County Defendants' actions violate Plaintiffs' and Class Members' Fifth Amendment rights, and/or place unconstitutional conditions on their exercise, thereby violating the Fifth

Amendment's prohibition on unconstitutional conditions and taking private property without just compensation.

83.     As a direct and proximate result of San Mateo County Defendants' violations, Plaintiffs and the Class Members have been damaged in amounts to be determined at trial.

84.     As a direct and proximate result of San Mateo County Defendants' violations, Plaintiffs and the Class Members are entitled to injunctive relief, including restitution, in amounts to be determined at trial based on the unlawful payments plus interest.

**B.     VIOLATION OF SHERMAN ANTITRUST ACT [BY ALL PLAINTIFFS AGAINST SAN MATEO COUNTY DEFENDANTS] – INJUNCTIVE RELIEF ONLY**

85.     Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

86.     For purposes of this cause of action, the relevant market is Inmate Phone Services within San Mateo County jails.  Because inmates and call recipients, including Plaintiffs, are a captive market in that they have no access to phone services other than those offered by the County Defendants, inmate phone services constitute a distinct market from phone services provided outside jails and prisons.  Indeed, there are companies, such as GTL and Securus, which compete against each other solely in the inmate phone service market.

87.     Rather than using their market power to obtain the most competitive phone prices for its consumers (inmates and call recipients), including Plaintiffs, through a typical bidding process, or by allowing more than one company to provide inmate phone services, the County Defendants did the opposite. They used their market control over the jails to enrich themselves at the expense of the phone services end consumers (inmates and call recipients), entering into an exclusive

1   agreement with the phone company willing to pay the highest kickback to the

2   County.

3       88.    By providing GTL and Securus exclusive access to a captive market,

4   the County Defendants allow GTL and Securus to prey on Plaintiffs and the class

5   they seek to represent by charging exorbitant rates, without any competitive

6   pressures.  In addition, by awarding the contract to GTL based on GTL agreeing to

7   pay the County at least $620,000 per year and in 2013 awarding the contract to

8   Securus based on Securus agreeing to pay the County at least $820,000 for the first

9   year and $795,000 per year thereafter, County Defendants functionally require

10  GTL and Securus to take advantage of its the exclusive market power granted it by

11  the County Defendants to charge rates far in excess of the rates that would prevail

12  in a competitive market.

13      89.    On the other hand, if the County Defendants permitted more than one

14  company to provide phone services within its jails and/or selected an exclusive

15  provider based on which company offered the most competitive pricing for end

16  consumers rather than the highest kickback to the County, consumers like

17  Plaintiffs would receive the benefits of such market competition, including lower

18  prices and increased quality and selection.

19      90.    County Defendants' conduct not only thwarted competition for inmate

20  phone services within County Defendants' jails, but totally eliminated competition

21  except competition as to who would provide the County Defendants the greatest

22  benefit in exchange for grant of the exclusive contract.

23      91.    The direct, proximate, and foreseeable result and effect of the

24  agreement between County Defendants and GTL, and more recently Securus, was

25  that competition for inmate phone services within County Defendants' jails

26  provided no market choice to the ultimate consumer of inmate phone services.

27

28

1   Consumers of inmate phone services, like Plaintiffs, must pay supra-competitive

2   prices for their phone calls.

3        92.    The exclusive provider agreements described herein between the

4   County of San Mateo and GTL and more recently Securus, (hereinafter referred to

5   as the "Agreement") constitutes an unreasonable, vertical agreement in restraint of

6   trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  The

7   anticompetitive effects of the Agreement are not overridden or justified by any

8   procompetitive benefits stemming from the Agreement.  The charges paid by

9   consumers to use inmate telephone services are significantly above the actual cost

10   of providing the telephone services.  Further, there are no safety concerns that

11   require such monopolistic arrangements, and certainly no requirements that the

12   County receive such substantial kickbacks, or any kickback at all.  To the extent

13   that any procompetitive benefits result from the Agreement, they could be

14   achieved by less restrictive means.

15        93.    As a direct, proximate, and foreseeable result of the foregoing

16   agreement, Plaintiffs have been injured by being charged supra-competitive prices

17   for use of inmate phone services within the County's jails.

18        94.    County Defendant possesses monopoly power over the relevant

19   market (previously defined). It has the power to both control prices by requiring

20   large commissions and the power to exclude competition by allowing only one

21   inmate phone provider access to the market. It controls 100% of the relevant

22   market. It has used its monopoly power to foreclose competition and gain a

23   competitive advantage in violation of Section 2 of the Sherman Antitrust Act, 15

24   U.S.C. § 2.

25        95.    County Defendant and GTL, and more recently Securus, have entered

26   into the previously described contract and agreement with the full knowledge and

27   intent to restrain trade, including trade among the various states; have injured

28

29

competition, and caused an antitrust injury resulting from that anti-competitive conduct to the end consumers (inmates and call recipients) who avail themselves of inmate phone services.

96.    GTL and Securus are not named as a Defendants herein but are unnamed co-conspirators.

97.    GTL is a nationwide company that engages in commercial activities throughout the United States. GTL describes itself on its website as "the leading provider of integrated corrections technology for facilities across North America." GTL lists on its website facility specific information for correctional facilities in California, Illinois, Arizona, Pennsylvania and Indiana. Career opportunities applications for anywhere in the United States are handled through its Human Resources offices in Mobile, Alabama. GTL provides a single contact number to its correctional facilities clients throughout the United States, available on its website. GTL integrates its technology on a national basis and consumer inquiries, wherever based, are handled through a single, integrated Service Center. On information and belief, GTL orders equipment used for its service from the stream of interstate commerce, and many of the members of the Call Recipient class are outside the state of California. Similarly, Defendant County and its County jails regularly do business with companies throughout the United States, and regularly orders products, including the products used for the foregoing contracts, from the stream of interstate commerce. Similarly, Securus is also a nationwide company that engages in commercial activities throughout the United States.  Securus was founded in 1986 and is headquartered in Dallas, Texas.  Securus describes itself on its website as a technology company that provides "leading edge civil and criminal justice technology solutions that improve public safety and modernize the incarceration experience."  Securus lists on its website that it serves approximately 3,400 correctional facilities and more than 1.2 million inmates across 48 states,

including California.  Securus integrates its technology on a national basis and consumer inquiries, wherever based, are handled through a single, integrated Service Center. On information and belief, Securus orders equipment used for its service from the stream of interstate commerce, and many of the members of the Call Recipient class are outside the state of California. Similarly, Defendant County and its County jails regularly do business with companies throughout the United States, and regularly orders products, including the products used for the foregoing contracts, from the stream of interstate commerce.  Thus, the conduct challenged herein has a substantial effect on interstate commerce.

98.     Although Defendant County of San Mateo is a political subdivision of the State of California, the conduct challenged herein has not been taken pursuant to a clearly articulated and affirmatively expressed state policy, and the State of California did not affirmatively contemplate that Counties and County jails would displace competition and has not delegated to Counties or County jails the authority to act anti-competitively in setting fees or commissions.  Enactment of the limitations on local or state government's authority to impose assessments, fees or taxes by virtue of Articles 13 C and D to the California Constitution makes clear that local authorities are not authorized to establish fees of any kind that are not reasonably related to their costs, which necessarily by its terms include anticompetitive fees and charges. See Cause of Action XI(D), *infra*.

99.     The Named Plaintiffs and the members of each class who do currently, or may in the future, use or avail themselves of the inmate telephone service provided by GTL and Securus, will suffer irreparable harm, and there is no adequate remedy at law, unless the Court grants injunctive relief as is further described in the Prayer for Relief section of this complaint.

C.    **VIOLATION OF CALIFORNIA CONSTITUTION ARTICLES 13C AND 13D [BY ALL PLAINTIFFS AGAINST SAN MATEO COUNTY DEFENDANTS].**

100.    Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

101.    The commissions received by the San Mateo County Defendants in exchange for their grant of exclusive rights to establish an inmate call system in their jails, although denominated as a commission, in fact constitute a tax under California law, and, as such, were not approved by the voters of the respective counties in which the tax was established, as required by Articles 13C and 13D of the California Constitution.

102.    As evidenced by the fact that the commissions are required by California Penal Code §4025 to be used in the first instance for a jail's inmate welfare fund, the primary purpose of the commissions is to raise revenue for governmental services.

103.    The commissions far exceed the reasonable cost to the County of San Mateo or San Mateo County Jail of providing services necessary to the activity for which the fee is charged, here the provision of a calling service for inmate calls.

104.    Pursuant to Article 13C §1 of the California Constitution, a tax "means any levy, charge, or exaction of any kind imposed by a local government" with certain specified exceptions.

105.    The first two relevant exceptions are charges "imposed for a specific benefit conferred or privilege granted" or for "a specific government service or product provided" in each of which situations the charge may "not exceed the reasonable costs to the local government" of "conferring the benefit or granting the privilege" or "providing the service or product." Because the charges here exceed the reasonable cost of the benefit, privilege, service or product, these exceptions are inapplicable.

106.   The third relevant exception is charges "imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits" and other inapplicable activities. Because the charges here do not constitute regulatory activities and, in any event, exceed the reasonable cost for the grant of the activity, this exception is inapplicable.

107.   The last relevant exception is a "charge imposed for entrance to or use of local government property, or the purchase, rental, or lease of local government property." Because the commission has never been characterized as, and is not, a charge for the limited use of government property, this exception is inapplicable. The Commission is in fact a fee unrelated to the use of government property, and that bears no rational relationship to the cost or value of whatever limited governmental access in involved in the transaction. The purpose of this exception is to allow government owned property that is leased or bought to do so at a reasonable market value, which is inapplicable here.

108.   Regardless of whether any of the exceptions under Article 13C §1 applies, the commissions nonetheless constitute an unlawful tax. Under Article 13C, the local government in all situations bears the burden of proving by a preponderance of the evidence that "a levy, charge, or other exaction is not a tax, that the amount is not more than necessary to cover the reasonable costs of the government activity, and that the manner in which costs are allocated to a payor bear a fair or reasonable relationship to the payor's burden on, or benefits received from, the governmental activity". This applies to all governmental levies, charges or exactions. It was added by Proposition 26, enacted in 2010, and applies to all of the enumerated exceptions under Article 13C §1. Thus, even if the commission constitutes a charge for the use of government property, it still must be reasonably related to the benefit conferred or benefit received, and, for the reasons previously stated, it does not.

109.   Accordingly, none of the exceptions under Article 13C §1 of the California Constitution apply, and in any event the commissions at issue here are a tax for which each Plaintiff class and its members are entitled to a refund, measured from the date of the first filing of a Govt. Code §910 claim applicable to that class until such time as the tax ceases to operate.

110.   As a direct and proximate result of San Mateo County Defendants' violations, Plaintiffs and the Class Members have been damaged in amounts to be determined at trial.

111.   As a direct and proximate result of San Mateo County Defendants' violations, Plaintiffs and the Class Members are entitled to injunctive relief, including restitution in amounts to be determined at trial based on the unlawful payments plus interest.

**D.   VIOLATION OF GOVT. CODE §11135 ET. SEQ. [BY ALL PLAINTIFFS AGAINST SAN MATEO COUNTY DEFENDANTS]**

112.   Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

113.   Both Inmate Class Members and Call Recipient Class Members are disproportionately African-American and Latino compared to the overall population of San Mateo County. They also disproportionately suffer from mental illness and drug addiction.

114.   Regardless of whether Inmate Class Members and Call Recipient Class Members are disproportionately African-American and Latino, or disproportionately suffer from mental illness or drug addiction, they are perceived as such.

115.   To the extent that Inmate Class Members and Call Recipient Class Members are not African-American and Latino, or do not suffer from mental illness or drug addiction, they are, for purposes of the ICS charges, inextricably

1  associated with such Class Members, and suffer the same injuries as Class

2  Members.

3      116.   Defendant County of San Mateo and its Sheriff's Department and

4  County Jail within San Mateo County, receive a significant amount of money from

5  the State of California. In fact, over 70 % of all state spending is for local

6  government assistance, of which, on information and belief, a substantial share,

7  amounting to many millions of dollars, go to fund various activities of the County

8  of San Mateo, including its county jail. For example, the State Controller's Office

9  Community Corrections 2014-2015 Subaccount allocation for San Mateo County

10  exceeded $14 Million.  See http://www.sco.ca.gov/Files-ARD-

11  Payments/localcomcorremit_1415_dofletter.pdf  "Across the state, county officials

12  are laying claim to billions in state funding to refurbish old jails and build new

13  ones." https://www.themarshallproject.org/2015/07/02/california-s-jail-building-

14  boom. It is anticipated that the State of California will distribute approximately

15  $4.4 Billion to the counties by 2016-2017 for realignment costs.

16  http://law.stanford.edu/wp-content/uploads/sites/default/files/child-

17  page/443444/doc/slspublic/SCJC%20Money%20full%20report.pdf. Thus, the

18  County of San Mateo qualifies as having received, and continuing to receive, state

19  funds, both generally and for the jail.

20      117.   Further, under realignment, the State of California is paying funds to

21  local counties, including Defendant County of San Mateo, for housing state

22  prisoners. See http://www.ppic.org/content/pubs/report/R_812MLR.pdf.

23      118.   There is no reasonable necessity or substantial legitimate justification

24  for the imposition of the ICS charges, and, in any event, they can be replaced by an

25  equally effective but less discriminatory alternative (e.g., a reasonable fee, or a

26  general tax or fee not aimed specifically at the disproportionately African-

27

28

American and Latino population that currently pays the ICS charges out of which Defendant County of San Mateo receives the lion's share.

119.   As a direct and proximate result of San Mateo County Defendants' violations, Plaintiffs and the Classes are entitled to injunctive relief, including restitution in amounts to be determined at trial based on the unlawful payments plus interest.

**E.   VIOLATION OF CALIFORNIA CIVIL CODE §52.1 [BY ALL PLAINTIFFS AGAINST SAN MATEO COUNTY DEFENDANTS].**

120.   Plaintiffs incorporate all previous and subsequent paragraphs of this Complaint into this claim.

121.   By their conduct, San Mateo County Defendants have interfered by threats, intimidation, or coercion, or attempted to interfere by threats, intimidation, or coercion of Plaintiffs' rights as secured by the First and Fourteenth Amendments to the United States Constitution and of the rights secured by the Constitution and laws of the state of California, including but not limited to California Constitution, Articles 13C, 13D and Art. I, sec. 7, and the federal and state statutory protections guaranteed to individuals based on race, including those statutes that prohibit policies resulting in a disparate impact against a particular race.

122.   San Mateo County Defendants' conduct in entering into contracts that condition Plaintiffs' and Class Members' First Amendment right to communicate with loved ones, family, friends and associates who are incarcerated (at least once the benefit is granted) on payments of funds that bear no reasonable nexus or rough proportionality to the cost to, or burden or effect on, Defendant County of San Mateo, or are otherwise unlawful, is a coercive act separate and apart from the imposition of the unlawful charges themselves. The contracts at issue in this Complaint authorize, require and force Plaintiffs and Class Members to make the

36

1    coercive choice of paying the ICS charges challenged in this Complaint or

2    foregoing their ability to communicate with family, friends and associates.

3        123.  ICS charges are especially vulnerable to the type of coercion that the

4    unconstitutional conditions doctrine prohibits because Defendant County of San

5    Mateo has the ability to control inmates' access to the outside world, and therefore

6    can pressure and coerce Class Members into paying hugely disproportionate and

7    unreasonable phone charges in order to be able to communicate with loved ones,

8    family, friends and associates.

9        124.  There was, and is, no lawful justification for San Mateo County

10   Defendants to threaten, intimidate or coerce any of the Plaintiffs, or to attempt to

11   use threats, intimidation, or coercion to interfere with Plaintiffs' rights to speak on

12   the telephone by conspiring with third party providers, such as GTL and Securus,

13   to charge illegal, unreasonable, excessive, substantially disproportionate, and

14   prohibitive rates and fees. San Mateo County Defendants' actions were taken with

15   malice and oppression to deter and/or prevent Plaintiffs from exercising their

16   protected constitutional and statutory rights.

17       125.  As a direct and proximate consequence of San Mateo County

18   Defendants' actions, Plaintiffs suffered, and continue to suffer, a loss of their

19   constitutional rights, pain and suffering, including stress and anxiety, financial

20   losses, and are entitled to all damages authorized by Civil Code §52.1 and all other

21   applicable laws. In addition, Plaintiffs are entitled to injunctive relief, including

22   restitution in amounts to be determined at trial based on the unlawful payments

23   plus interest and attorneys' fees pursuant to Civ. Cod. §52.1(h).

24       **F.    ADDITIONAL VIOLATIONS OF CALIFORNIA CONSTITUTION [BY ALL**

25           **PLAINTIFFS AGAINST SAN MATEO COUNTY DEFENDANTS].**

26       126.  Plaintiffs incorporate all previous and subsequent paragraphs of this

27   Complaint into this claim.

28

127.   The conduct alleged in this Complaint violate Plaintiffs' and Class Members' rights of free speech and association under Articles 2 and 3 of the California Constitution, their right to due process of law under Article 7 of the California Constitution (including the right not to have unconstitutional conditions imposed in exchange for access to a government benefit), their right to equal protection of the law under Article 7 of the California Constitution and their right to just compensation for a public use under Article 19 of the California Constitution.

128.   As a direct and proximate result of San Mateo County Defendants' violations, Plaintiffs and the Class Members have been damaged in amounts to be determined at trial, and claim such damages directly under the above Constitutional provisions to the extent permitted by law.

129.   As a direct and proximate result of San Mateo County Defendants' violations, Plaintiffs and the Class Members are entitled to injunctive relief, including restitution in amounts to be determined at trial based on the unlawful payments plus interest.

## XI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members they seek to represent, request monetary and injunctive relief against each defendant as follows:

1.      General and special damages according to proof;

2.      A refund/disgorgement/restitution of the monies paid by Class Members that, in turn, were used to pay the contracted commissions to County Defendants the amounts contracted for in connection with the inmate calling agreements of each with telecommunications companies.

3.      Economic, physical and emotional distress damages (in addition to the damages sought in the preceding paragraph, or to the extent not covered or

1    awarded pursuant to that paragraph), and physical and emotional distress and other

2    damages according to proof.

3            4.      Temporary, preliminary and permanent injunctive relief prohibiting

4    Defendant County of San Mateo from continuing to engage in the unlawful

5    practices complained of herein as follows:

6                            a.  Prohibiting the Defendants from renewing, or entering into

7                                new, ICS contracts under which it receives commissions or fees

8                                except exceeds the reasonable cost of providing the service of

9                                allowing telephone access cost after determination of such

10                               amounts by the court;

11                           b.  Prohibiting the Defendants, while the current challenged

12                               contract remains in effect, from using the commissions it

13                               receives under the contract for any purpose other than

14                               placement in a court supervised fund for any purpose other than

15                               ultimately restoring such funds back to the class members who

16                               paid charges from which said commissions were taken to the

17                               extent of said commissions.

18           5.      Temporary, preliminary and permanent injunctive relief requiring

19   Defendant County of San Mateo to provide refunds/disgorgement/restitution of the

20   monies paid or to be paid by Class Members as a form of equitable relief.

21           6.      Class wide presumed damages for non-economic damages for class

22   members on the federal claims, as well as statutory damages as allowed by law

23   under California Civil Code §§52 and 52.1.

24           7.      Attorneys' fees and costs under 42 U.S.C. §1988, 15 U.S.C. § 26,

25   California Civil Code §§ 52(b)(3), 52.1(h); California Code of Civil Procedure

26   §1021.5, and whatever other statute or law may be applicable.

27           8.      Grant any other relief that this Court may deem fit and proper.

28

DATED: August 8, 2016           Respectfully Submitted,

                                KAYE, MCLANE, BEDNARSKI & LITT, LLP
                                RAPKIN & ASSOCIATES, LLP


                                By:  /s/   Barrett S. Litt
                                    Barrett S. Litt
                                    Attorneys for Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves individually and on behalf of the Class, demand a jury trial to the extent available under applicable law.

DATED: August 8, 2016           Respectfully Submitted,

                                KAYE, MCLANE, BEDNARSKI & LITT LLP
                                RAPKIN & ASSOCIATES, LLP

                                By:  /s/   Barrett S. Litt
                                    Barrett S. Litt
                                    Attorneys for Plaintiffs