# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALFRED BANKS, ET AL.,** Plaintiffs, vs. **COUNTY OF SAN MATEO,** Defendant. | **OMNIBUS ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**[1] CASE NO. 16-CV-04455-YGR |
| **MICHAEL THATCHER, ET AL.,** Plaintiffs, vs. **COUNTY OF SANTA CLARA,** Defendant. | CASE NO. 16-CV-4781-YGR |
| **CHARLENE HARRIS, ET AL.,** Plaintiffs, vs. **COUNTY OF CONTRA COSTA,** Defendant. | CASE NO. 16-CV-4795-YGR |
| **JACQUELYNNE M. CLARK-RUSSELL, ET AL.,** Plaintiffs, vs. **COUNTY OF ALAMEDA,** Defendant. | CASE NO. 16-CV-4816-YGR |

Plaintiffs in the above-captioned putative class actions have brought these actions against defendant counties of San Mateo, Santa Clara, Contra Costa, and Alameda for alleged violations

---

[1] Unless otherwise specified, the docket numbers and documents referenced herein shall refer to the docket in *Banks v. County of San Mateo*, Case No. 16-CV-4455 (N.D. Cal.).

related to exclusive grants of telephone servicing contracts inside county prison facilities that have allegedly resulted in grossly excessive commissions for such services. The Court previously granted defendants' motion to dismiss, dismissing plaintiffs' claims: (i) Sherman Act claims with prejudice; (ii) First Amendment right of association claims without prejudice; (iii) Fifth Amendment claims for unconstitutional conditions and unlawful takings with prejudice; and (iv) Fourteenth Amendment equal protections claims with prejudice. On September 9, 2017, plaintiffs filed amended complaints, re-alleging their claims under the First Amendment.[2]

Currently before the Court are defendants' motions to dismiss the amended complaints, arguing that plaintiffs have failed to allege materially different facts that would be consistent with this Court's prior order dismissing the First Amendment claims. Plaintiffs concede that they have not "asserted substantially different or additional operative facts from those asserted in the previous complaint(s)." (Dkt. No. 72 at 7.) Rather, they argue that the modifications have been presented in what "they consider the strongest possible framework to address the validity of their First Amendment claim." (*Id.*) Thus, essentially, in filing their amended complaints, plaintiffs are asking this Court to reconsider its prior order outside of the context of a motion for reconsideration.

In light of the plaintiffs' concessions, the filing of their amended complaints can only be viewed as an attempt to seek reconsideration of the Court's prior order. Plaintiffs' actions are procedurally improper, and, in any event, plaintiffs fail to satisfy the standards for granting a motion for reconsideration. *See School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."); *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (reconsideration of a prior ruling is an "extraordinary remedy, to be

---

[2] The amended complaints are as follows: (i) *Banks v. San Mateo*, No. 16-CV-4455, Dkt. No. 69 ("Banks/San Mateo Third Amended Complaint" or "Banks/San Mateo TAC"); (ii) *Thatcher v. Santa Clara*, No. 16-CV-4781, Dkt. No. 63 (addressing a second amended complaint ("SAC"), the "Thatcher/Santa Clara SAC"); (iii) *Harris v. Contra Costa*, No. 16-CV-4795, Dkt. No. 55 ("Harris/Contra Costa SAC"); and (iv) *Clark-Russell v. Alameda*, No. 16-CV-4816, Dkt. No. 53 ("Clark-Russell/Alameda SAC").

used sparingly").[3] Additionally, because the amended complaints contain essentially the same facts already deemed by this Court to be insufficient, the Court finds that they fail again for the reasons stated in its prior order dismissing such claims. (Dkt. No. 68 at 17–21.) Nevertheless, the Court addresses plaintiffs' arguments briefly:[4]

First, plaintiffs argue that the counties have provided a non-public forum by providing telephone access, and thus, restrictions on the same are subject to reasonableness standards.[5] Within that context, plaintiffs contend, the inmates' speech on the telephone is protected under the First Amendment and is subject to the four-part test for reasonableness set forth in *Turner v. Safley*, 482 U.S. 78 (1987). As an initial matter, the case cited by plaintiffs with regard to the establishment of a "non-public forum" does not relate to the cost of jail phone calls and is, largely, inapposite. *See Currier*, 379 F.3d at 722 (addressing access to delivery mail service and no-fee postal boxes to homeless persons). In any event, plaintiffs fail to explain why this characterization is relevant in the present circumstances. As the Court previously found, the Ninth Circuit has defined the precise First Amendment right at issue in this litigation, and has set forth the framework for determining whether a regulation that impinges upon that right is constitutional. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002). Within that context, the Court found

---

[3] Moreover, pursuant to Civil Local Rule 7-9(a), no party may "notice a motion for reconsideration without first obtaining leave of Court to file the motion." To prevail on a motion seeking leave to file a motion for reconsideration, the party seeking leave must demonstrate: (i) that at the time of the motion for leave, a material difference in fact or law existed from that which was presented to the court before entry of the order; (ii) the emergence of new material facts or a change of law occurring after the time of such order; or (iii) a manifest failure by the court to consider material facts or dispositive arguments. *Id.*

[4] The Court adopts the Background section and discussion of legal standards set forth in its prior order dismissing the complaints in the above-captioned actions. (*See* Dkt. No. 68.) Additionally, the Court finds that the instant motions can be resolved without a hearing. Accordingly, the Court **VACATES** the hearing currently set for October 24, 2017.

[5] The Ninth Circuit has held that constitutional review over governmental regulations restricting First Amendment rights in a non-public forum—fora that have not been categorized as "public fora" such as streets, parks, or designated platforms for expressive conduct—are less exacting. *See Currier v. Potter*, 379 F.3d 716, 728 (9th Cir. 2004). With respect to non-public fora, "[i]n addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* (citation omitted).

3

1  that plaintiffs failed to allege the imposition of any regulations or restrictions that prevent them

2  from using the telephone for communications. Plaintiffs have not raised any new arguments in

3  this regard.[6] Thus, for the same reasons, the Court finds that plaintiffs have failed to satisfy the

4  pleading standards here.

Second, plaintiffs renew their argument that the commissions should be characterized as taxes and are therefore subject to scrutiny under *Minneapolis Star & Tribune Co.*, 460 U.S. 575, 582 (1983), which held broadly that "taxes" on the exercise of protected speech must be justified by an "overriding governmental interest." *Id.* (invalidating a tax on the "cost of paper and ink products consumed in the production of a publication" because it singled out the press for special treatment). Previously, the Court rejected plaintiffs' arguments in this regard, finding that the proper framework for analyzing a First Amendment violation in this context falls under the Ninth Circuit's rulings in *Valdez*.[7] Plaintiffs raise no new arguments in this context, and fail to demonstrate how this distinction would affect the overall analysis.

Third, and finally, plaintiffs add a new argument that, if the California courts find that the commissions are unlawful under state law, they necessarily violate plaintiffs' First Amendment

---

[6] Plaintiffs argue that the Court erred in determining that the existence of alternative means of communication extinguishes the constitutional interest at issue. The Court, however, did not so find. Rather, the Court found that in light of the Ninth Circuit's decisions in *Valdez*, no impingement of the inmate's rights of communication under the First Amendment was committed because the inmates continued to have access to telephones. The Ninth Circuit opined in *Johnson v. California*, 207 F.3d 650 (9th Cir. 2000) that a First Amendment violation *could* exist in this context *if* the prices for telephone access were so "exorbitant as to deprive prisoners of phone access altogether." *Id.* at 656. That is not the situation that plaintiffs have alleged here. Rather, plaintiffs concede in their complaints that they regularly have access to telephones in prison, albeit not with the frequency they would like due to the higher costs of using the phones. (*See* Banks/San Mateo TAC ¶ 24 ("He attempts to stay in close contact with his wife [] and calls her at least twice a day. However, due to the cost of each call he makes from jail, his wife pays a high price to stay in touch with her husband."); Thatcher/Santa Clara SAC ¶ 23 ("Due to the cost of each call . . . [plaintiffs] have paid many hundreds of dollars to GTL since their son's imprisonment."); Harris/Contra Costa SAC ¶ 25 (same); Clark-Russell/Alameda SAC ¶ 25 (same).) Those allegations, however, do not give rise to a cause of action. *See Johnson*, 207 F.3d at 656 ("There is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether.").

[7] Additionally, as noted in the Court's prior order, the cases upon which plaintiffs rely for this proposition pertain to actual taxes, or legislative or regulatory actions taken by the government, requiring payment of a licensing fee prior to being granted permission to partake in a constitutionally protected activity. (Dkt. No. 68 at 17–18 n.12.)

4

1 rights. However, plaintiffs offer no support for this proposition. The cases cited by plaintiffs all pertain to conspiracy and enterprise liability.[8] Plaintiffs raised a similar argument in the context of their equal protection claim, which the Court previously dismissed with prejudice. In that context, the Court found that "whether the fees are impermissible taxes under the California constitution would not establish plaintiffs as similarly situated to the public-at-large, but rather simply invalidate the fees altogether for everyone." (Dkt. No. 68 at 24.) Similarly, the invalidation of the fees under the California constitution would simply invalidate them altogether, but has no impact on whether the actions were violations of plaintiffs' First Amendment rights.

For the foregoing reasons, none of plaintiffs' arguments made in opposition to the motions to dismiss persuades. Thus, for this additional reason, the Court finds that dismissal of the actions is appropriate. Accordingly, the Court **GRANTS** defendants' motions and **DISMISSES WITH PREJUDICE** plaintiffs' amended complaints.

This Order terminates the following docket numbers in each case as follows:

*Banks v. San Mateo*, No. 16-CV-4455: Docket Number 69.

*Thatcher v. Santa Clara*, No. 16-CV-4781: Docket Number 65.

*Harris v. Contra Costa*, No. 16-CV-4795: Docket Number 57.

*Clark-Russell v. Alameda*, No. 16-CV-4816: Docket Number 55.

The Clerk shall close the files above.

**IT IS SO ORDERED.**

Dated: October 12, 2017

                         **YVONNE GONZALEZ ROGERS**
                         **UNITED STATES DISTRICT COURT JUDGE**

---

[8] *See Bedford Cut Stone Co. v. Journeymen Stone Cutters' Ass'n of N. Am.*, 274 U.S. 37, 55 (1927) ("Where the means adopted are unlawful, the innocent general character of the organizations adopting them or the lawfulness of the ultimate end sought to be attained, cannot serve as a justification."); *Pettibone v. United States*, 148 U.S. 197, 203 (1893) ("A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means . . . ."); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1549 (9th Cir. 1989) ("A conspiracy is a combination of two or more persons, by concerted action to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means.").